**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

SHANE WILLIAMS, )
)
    Plaintiff, )
)
v. )
) **Case No. 4:19-CV-2332-NCC**
ANDREW M. SAUL, )
Commissioner of Social Security )
)
    Defendant. )

<u>**MEMORANDUM AND ORDER**</u>

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision

of the Commissioner denying the application of Shane Williams ("Plaintiff") Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*

Plaintiff has filed a brief in support of the Complaint (Doc. 19) and associated Statement of

Material Facts (Doc. 18) and Defendant has filed a brief in support of the Answer (Doc. 23) and

associated Statement of Material Facts (Doc. 23-1).  The parties have consented to the

jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C.

§ 636(c) (Doc. 9).

**I. PROCEDURAL HISTORY**

Plaintiff filed his application for DIB on September 15, 2016 (Tr. 191-92).  Plaintiff was

initially denied on December 23, 2016, and Plaintiff filed a Request for Hearing before an

Administrative Law Judge ("ALJ") on December 30, 2016 (Tr. 112, 122-123).  After a hearing,

by decision dated October 30, 2018, the ALJ found Plaintiff not disabled (Tr. 52).  On June 14,

2019, the Appeals Council denied Plaintiff's request for review (Tr. 1-5).  As such, the ALJ's

decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social

Security Act through December 31, 2016 (hereinafter "the date last insured"), and that Plaintiff

has not engaged in substantial gainful activity since June 16, 2011, the alleged onset date (Tr.

45).  The ALJ found Plaintiff has the severe impairment of degenerative disc disease, status-post

lumbar fusion surgery (*Id.*).  The ALJ concluded that no impairment or combination of

impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R.

Part 404, Subpart P, Appendix 1 (Tr. 46).  After considering the entire record, the ALJ

determined Plaintiff has the residual functional capacity ("RFC") to perform sedentary work[1]

with the following limitations (*Id.*).  Plaintiff can sit for six hours and stand and walk for two

hours (*Id.*).  He can occasionally climb ramps and stairs, but never climb ladders, ropes or

scaffolds (*Id.*).  He can occasionally stoop, kneel, crouch and crawl (*Id.*).  He should not work

near unprotected height or hazardous machinery and should avoid concentrated exposure to

extreme temperatures or vibration (Tr. 46-47).  The ALJ found Plaintiff not capable of

performing past relevant work through the date last insured but that there were jobs that existed

in significant numbers in the national economy that the Plaintiff could have performed including

addresser, document preparer, and information clerk (Tr. 50-51).  Thus, the ALJ concluded that a

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or
carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined
as one which involves sitting, a certain amount of walking and standing is often necessary in
carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and
other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

finding of "not disabled" was appropriate (Tr. 52).  Plaintiff appeals, arguing a lack of substantial

evidence to support the Commissioner's decision (Doc. 19 at 15).

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for

determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "If a claimant fails

to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is

determined to be not disabled."  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting

*Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the

claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.

20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20

C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as

"any impairment or combination of impairments which significantly limits [claimant's] physical

or mental ability to do basic work activities. . . ."  *Id.*  "'The sequential evaluation process may

be terminated at step two only when the claimant's impairment or combination of impairments

would have no more than a minimal impact on [his or] her ability to work.'"  *Page v. Astrue*, 484

F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir.

2001).

Third, the ALJ must determine whether the claimant has an impairment which meets or

equals one of the impairments listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d).

If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is

per se disabled without consideration of the claimant's age, education, or work history.  *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work.  20

C.F.R. §§ 416.920(f), 404.1520(f).  The burden rests with the claimant at this fourth step to

establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to

support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact finder.  *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently.  *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff raises three issues.  First, Plaintiff argues that the ALJ erred in failing to give proper weight to the opinions of Dr. Alexander Angerman, M.D., Dr. Kevin Aminian, M.D., Dr. Anne Welty, M.D., Dr. Barry Burchett, M.D., Dr. Charles Wetherington, M.D., Plaintiff's treating physician[2], and overly relies upon state medical consultant Kevin Threlkeld, M.D. (Doc. 19 at 3-8).  Second, Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence (*Id.* at 10).  Third, Plaintiff asserts that the ALJ's credibility analysis is deficient and lacks the support of substantial evidence (*Id.* at 11).[3]  For the following reasons, the Court finds that Plaintiff's arguments are without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

## A. Medical Opinion Evidence

### 1. Opinion of Treating Physician Dr. Charles Wetherington, M.D.

---

[2] The parties do not dispute that Dr. Wetherington is Plaintiff's treating physician (*See* Doc. 19 at 6; Doc. 23 at 5).

[3] Plaintiff in his brief refers to this as a "credibility analysis", but Social Security Ruling (SSR) 16-3p eliminated the term "credibility" from the analysis of subjective complaints.

First, Plaintiff asserts that the ALJ erred in failing to give good reasons why she did not afford the opinion of treating physician Dr. Charles Wetherington, M.D. ("Dr. Wetherington") controlling weight.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c);[4] *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015).  "A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."  *Reece v. Colvin*, 834 F.3d 904, 908-09 (8th Cir. 2016) (internal quotations omitted).  "Although a treating physician's opinion is usually entitled to great weight, it 'do[es] not automatically control, since the record must be evaluated as a whole.'"  *Id.* at 909 (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)).  "A treating physician's own inconsistency may undermine his opinion and diminish or eliminate the weight given his opinions."  *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (internal quotation marks omitted).  Whether the ALJ gives the opinion of a treating physician great or little weight, the ALJ must "give good reasons" for doing so.  *Prosch*, 201 F.3d at 1013 (citing 20 C.F.R. § 404.1527(d)(2)).

The ALJ properly considered the opinion of Dr. Wetherington, Plaintiff's treating physician, affording his opinion "little weight" (Tr. 50).  As a preliminary matter, the Court notes that Plaintiff does not make it clear in his brief what "postoperative restrictions" were improperly assessed by the ALJ, or why this assessment was prejudicial to the Plaintiff (*See* Doc. 19 at 6). *See Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) ("To show an error was not harmless, Byes

---

[4] Under current regulations, a treating physician's opinion is entitled to no special deference.  *See* 20 C.F.R. § 404.1520c(c).  These regulations were effective as of March 27, 2017.  20 C.F.R. § 404.1527.  However, Plaintiff's claim was filed on March 27, 2015, so the old regulations apply.

must provide some indication that the ALJ would have decided differently if the error had not occurred.").

Following Plaintiff's October 2014 fusion surgery, Dr. Wetherington noted on November 6, 2014, that Plaintiff should not lift over 15 pounds (Tr. 408).  This specific limitation opined by Dr. Wetherington only appears once in the record (*Id.*).  Furthermore, Dr. Wetherington's limitation that Plaintiff should not lift over 15 pounds does not appear in the record on Plaintiff's next visit only two weeks later (*See* Tr. 412-14).  As such, the ALJ correctly concluded that this limitation only represented a short-term limitation ("snapshot") that does not help Plaintiff establish a long-term limitation (Tr. 50).  *See Turpin v. Colvin*, 750 F.3d 989, 994 (8th Cir. 2014) (quoting 42 U.S.C. § 416(i)(1)(A)) ("To show disability, [plaintiff] must demonstrate 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months.'").

The ALJ also correctly concludes that Dr. Wetherington's notations that Plaintiff should be "off work" cannot be used as medical evidence that Plaintiff is disabled (Tr. 406, 429, 442, 448).  Determining whether Plaintiff is disabled is a legal conclusion that is reserved to the Commissioner.  *See KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 371 (8th Cir. 2016) (Even "[t]reating physician opinions are not medical opinions that should be credited when they simply state that a claimant cannot be gainfully employed, because they are merely opinions on the application of the statute.").  Additionally, the weight given to Dr. Wetherington on this issue seems to be largely, if not entirely moot.  The ALJ's assessment of a sedentary RFC for Plaintiff limits him to "lifting no more than 10 pounds at a time . . ." which is not inconsistent with Dr. Wetherington's opinion that Plaintiff should avoid lifting more than 15 pounds (*Compare* Tr.

46, *with* Tr. 408).  20 C.F.R. § 404.1567(a).  As such, the Plaintiff has also failed to demonstrate

prejudice.  *See Byes*, 687 F.3d at 917.  Furthermore, as Plaintiff's last visit with Dr.

Wetherington was May 19, 2015, any assertion that Dr. Wetherington continued to have Plaintiff

"off work" or that he might not have cleared Plaintiff to work following his September 14, 2015

CT and MRI is unsupported by the record (Doc. 19 at 6-7; Tr. 462-63, 448).

### 2. Opinion of Dr. Alexander Angerman, M.D.

Second, Plaintiff argues that the ALJ erred by not providing more weight to the opinion

of Dr. Alexander Angerman, M.D. ("Dr. Angerman"), Plaintiff's workers compensation

examiner, regarding Plaintiff's disabled status and functional limitations (Doc. 19 at 4-6).  On

May 24, 2012, Dr. Angerman conducted a medical examination and evaluation of Plaintiff's

back pain and concluded that he would be "temporarily totally disabled" until one year post

lumbosacral spine surgery (Tr. 296, 307).  Following Plaintiff's spinal surgery on October 10,

2014, Dr. Angerman again evaluated Plaintiff on September 3, 2015 (Tr. 471).  On July 19,

2016, Dr. Angerman issued a final report based on the September 3, 2015 exam and after

receiving supplemental medical records (Tr. 483).  In this report, Dr. Angerman concluded that

Plaintiff had certain permanent disabilities associated with his lumbosacral spine, and that these

disabilities limited him to "semi-sedentary work activities as well as prolonged standing and

walking activities" (Tr. 490).

The ALJ properly considered the opinion of Dr. Angerman in affording his opinion "little

weight" regarding Plaintiff's disabled status, and "partial weight" to his opinion that Plaintiff

was limited to semi-sedentary work (Tr. 49, 307, 488, 490).  As stated previously, Dr.

Angerman's conclusions that Plaintiff was "temporarily totally disabled" or "permanently

disabled" are legal conclusions reserved to the Commissioner and cannot be used as evidence of

Plaintiff's disability (Doc. 19 at 4-5; Tr. 49, 307, 488).  *See Stoner,* 818 F.3d at 371. Plaintiff's

second argument is also without merit because the "functional limitations" cited by Plaintiff

from Dr. Angerman were only a summary of Plaintiff's subjective complaints and were not a

functional assessment of Plaintiff's limitations (Tr. 488).  This was clearly indicated by Dr.

Angerman in his assessment (*See id.*).

Despite this, the ALJ still afforded Dr. Angerman's opinion that Plaintiff was limited to

"semi-sedentary work activities" partial weight because of the probative value it had to the extent

that it corroborated the Plaintiff's allegations (Tr. 49, 490).  Furthermore, the medical records

discussed by Plaintiff on page five of his brief not only do not contradict the ALJ's assessment of

Dr. Angerman's opinion, but much of the same evidence is explicitly mentioned and considered

by the ALJ (*Compare* Doc. 19 at 5, *with* Tr. 48).  For example, Plaintiff and ALJ both discuss the

CT scans of Plaintiff's back in reference to his back pain, "His straight leg raising testing the

supine position was positive bilaterally", and the "tenderness in the lumbosacral spine" (*Id.*).  As

such, Plaintiff fails to establish why the opinion of Dr. Angerman was falsely weighed or how he

is prejudiced by the ALJ's opinion.  *See Byes*, 687 F.3d at 917.

### 3. Opinions of Consulting Examiners Dr. Kevin Aminian, M.D. and Dr. Anne Welty, M.D.

Third, Plaintiff argues that the ALJ erred in affording the opinions of consultative

examiners neurologist Dr. Kevin Aminian, M.D. ("Dr. Aminian") and psychiatrist Dr. Anne

Welty, M.D. ("Dr. Welty") "little weight" (Doc. 19 at 7) (citing Tr. 50).  Plaintiff asserts that the

ALJ's reasoning that the opinions did not present a reliable picture of the Plaintiff's functioning

during the applicable period is unsupported by the record (*Id.*).  On October 17, 2017, Dr.

Aminian conducted a neurological medical evaluation of Plaintiff (Tr. 602-19).  On October 26,

2017, Dr. Welty conducted a psychiatric medical-legal evaluation of Plaintiff (Tr. 638-97).  As a preliminary matter, Plaintiff's discussion on this point is quite brief, and as noted previously, Plaintiff does not clearly articulate how the ALJ's treatment of these opinions were prejudicial or erroneous (*See* Doc. 19 at 7).  *See Byes*, 687 F.3d at 917.

The ALJ properly considered the opinions of Dr. Aminian and Dr. Welty in assigning their opinions "little weight" (Tr. 50).  In doing so, the ALJ simply stated that the opinions "do not present a reliable picture of the claimant's functioning during the applicable period" because their opinions were rendered after December 31, 2016, Plaintiff's date last insured (*Id.*).  While the explanation provided by the ALJ is brief, the Court does not consider the weight given by the ALJ to be prejudicial to the Plaintiff.  First, as Defendant correctly indicates, Dr. Welty's conclusion that Plaintiff is disabled is a legal conclusion reserved to the Commissioner as previously discussed (Doc. 23 at 12; Tr. 655).  *See Stoner,* 818 F.3d at 371.  Second, Plaintiff raises no admissible issue that contradicts the opinion of the ALJ, nor does there appear to be any opinion by Dr. Aminian or Dr. Welty in the record that contradicts the ALJ (*See* Doc. 19 at 7).  Third, the ALJ properly discussed all of the available medical evidence from the relevant period and Dr. Welty and Dr. Aminian did not have the benefit of any additional medical information from that time (Doc. 23 at 10-11).  Fourth, as Defendant correctly points out, Dr. Aminian did not list any functional limitations for Plaintiff (Doc. 23 at 11; Tr. 610).  In fact, under Dr. Aminian's listing "work restrictions" he stated, "[f]rom a neurological viewpoint, the patient does not require any work restrictions." (Tr. 610).  This assessment is also supported by Dr. Welty's opinion (Tr. 665) ("[n]o specific psychiatric work restriction[s] are indicated").  These opinions would seem to undermine Plaintiff's claims.

Lastly, while Dr. Welty does conduct a comprehensive review of Plaintiff's psychological state, the psychiatric evaluations were largely the result of tests performed outside the insured period (*See e.g.*, Tr. 651-53).[5]  Additionally, other than Plaintiff's conclusory statement that "[l]ittle weight was given to . . . Anne Welty M.D." Plaintiff provides no further discussion or specific argument as to why Dr. Welty's opinion should have been given more weight (See Doc. 19 at 7).  Furthermore, it is notable that Dr. Mohammed Ashraf, M.D. ("Dr. Ashraf"), Plaintiff's primary care physician, noted in every "ROF" (review of systems) between September 3, 2015 and August 18, 2016 that Plaintiff "reports no depression . . . no anxiety . . . no suicidal thoughts . . . [and] no fatigue" (Tr. 496, 499, 501, 504, 507-08, 520).  This consistent finding from Dr. Ashraf only further supports the ALJ's conclusion that Dr. Welty's psychiatric evaluation does not present a reliable picture of the Plaintiff's function during the insured period (Tr. 50).

### 4. Opinion of State Agency Medical Consultant Dr. Kevin Threlkeld, M.D.

Fourth, Plaintiff asserts that the ALJ improperly primarily relied on the opinion of Dr. Kevin Threlkeld, M.D. ("Dr. Threlkeld"), a non-examining state agency physician (Doc. 19 at 4). Plaintiff argues that Dr. Threlkeld provided no explanation of the conclusions or discussion of how the evidence supported the findings (*Id.*).  On December 23, 2016, Dr. Threlkeld issued a Physical Residual Functional Capacity Assessment in which he opined that Plaintiff could occasionally lift and/or carry 10 pounds, frequently lift and/or carry less than 10 pounds, stand and/or walk for a total of 2 hours, sit for a total of about 6 hours in an 8-hour workday (Tr. 107).

---

[5] Of note, Plaintiff does not raise any issues regarding the ALJ's finding that his mental impairment of depression was nonsevere (Tr. 46).  *See also* Tr. 49 (citing Tr. 105) (affording "great weight" to the opinion of state agency physician Marsha Toll, Psy.D. that no medically determinable mental health impairment had been established).

Dr. Threlkeld further found Plaintiff have the following postural limitations: he can only occasionally climb ramps and stairs, climb ladders, ropes, scaffolds, balance, stoop, kneel, crouch, and crawl (*Id.*).

The ALJ properly considered the opinion of Dr. Threlkeld in affording him "great weight" that Plaintiff is capable of light exertional work activity (Tr. 50).  Contrary to Plaintiff's assertions, the ALJ did not rely only or even "primarily" rely on the opinion of Dr. Threlkeld in assessing Plaintiff's RFC (Doc. 19 at 4).  The ALJ provided a comprehensive evaluation of Plaintiff's medical history concerning his back issues (Tr. 47-49), after which she reasonably concluded that Dr. Threlkeld's opinion that Plaintiff was limited to light exertional work activity was consistent with the record (Tr. 49).  *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").  This opinion is also consistent with Dr. Angerman's opinion that Plaintiff can do sedentary work, as noted above (Tr. 490).  Furthermore, the ALJ properly reviewed, as discussed in detail elsewhere, the opinions of several other physicians (*See* Tr. 49-50).

Plaintiff asserts that Dr. Threlkeld "provided no explanation of the conclusions or discussion of how the evidence supported the findings" other than a CT performed in December of 2016 (Doc. 19 at 5), but this is not accurate.  In determining Plaintiff's RFC, Dr. Threlkeld considered the results of a CT scan on September 14, 2015, a consultative exam on August 18, 2016, as well as various limitations concerning Plaintiff's ability to stand, his need to use a cane, and others (Tr. 107-09).  In fact, Plaintiff's own consulting physicians seem to support Dr. Threlkeld's opinion that Plaintiff can perform sedentary work (*See* Tr. 610, 655).  Plaintiff also does not provide any citation to the record that would contradict the opinion of Dr. Threlkeld, or

his assessment that Plaintiff can perform sedentary work.  As such, the ALJ properly provided

great weight to the opinion of Dr. Threlkeld.

### 5. Opinion of Dr. Barry Burchett, M.D.

Lastly, Plaintiff argues that the ALJ's decision "has no discussion of the supportability of

[Dr.] Aminian or [Dr.] Bruchett's findings or any of the other factors required by the

regulations" (Doc. 19 at 9).  Dr. Aminian's opinion has been discussed previously.  On

December 16, 2016, Dr. Barry Burchett, M.D. ("Dr. Burchett") conducted an internal medicine

examination of Plaintiff (Tr. 540-45).  Dr. Burchett found that Plaintiff's straight leg raise testing

was positive on the right in the supine position at 70°; he was unable to walk on his toes or heels

well; he was able to perform a single full squat with complaints of pain in his low back by using

both his cane and the other hand on the table; deep tendon reflexes were absent but symmetrical;

strength in the right lower extremity was graded 4/5; and forward flexion of the right hip was

slightly decreased (Tr. 542-44).  Contrary to Plaintiff's assertions, the ALJ clearly evaluated

these medical findings by Dr. Burchett (Doc. 19 at 9; *See* Tr. 49).  In fact, the ALJ's opinion

addresses the exact same findings that Plaintiff mentions in his brief with a few additional notes

(*Compare* Doc. 19 at 8, *with* Tr. 49).  As noted by ALJ, Dr. Burchett's findings are largely

consistent with a sedentary RFC, and the Plaintiff does not clearly articulate how it is

inconsistent (Tr. 49).

Plaintiff also does not clearly indicate which factors in the regulations the ALJ failed to

consider, but the Court also dispenses with this argument.  Although the ALJ did not address all

of the factors found in 20 C.F.R. §§ 404.1527(c) for each opinion, the ALJ is not required to cite

specifically to the regulations but need only clarify whether she discounted the opinions and

why.  *Kientzy v. Colvin*, No. 4:15CV707 JMB, 2016 WL 4011322, at *8 (E.D. Mo. July 27,

2016) (citing *Grable v. Colvin*, 770 F.3d 1196, 1201-02 (8th Cir. 2014)).  In weighing a treating

source opinion, it is the ALJ's duty to resolve conflicts in the evidence, and the ALJ's finding in

that regard should not be disturbed so long as it falls within the "available zone of choice."  *E.g.,*

*Hacker v. Barnhart,* 459 F.3d 934, 936–38 (8th Cir. 2006); *Tripp v. Colvin*, No. 2:14-CV-80-

SPM, 2015 WL 3645026, at *5 (E.D. Mo. June 10, 2015).  Here, the ALJ gave good reasons for

discounting each of the opinions above in assigning them limited weight.  Those reasons were

supported by substantial evidence and place the ALJ's decision within the available zone of

choice.

**B. Evaluation of Plaintiff's Subjective Complaints of Pain**

The Court will next consider the ALJ's evaluation of Plaintiff's subjective complaints,[6]

as the ALJ's evaluation of Plaintiff's symptoms were essential to the ALJ's determination of

other issues, including Plaintiff's RFC.  *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir.

2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was

influenced by his determination that her allegations were not credible.") (citing *Tellez v.*

*Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)).  In assessing a claimant's credibility, the ALJ must

consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3)

the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of

medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence

of objective medical evidence to support the claimant's complaints.  *Finch v. Astrue*, 547 F.3d

933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  "The

---

[6] Social Security Ruling (SSR) 16-3p eliminated the term "credibility" from the analysis of
subjective complaints.  However, the regulations remain unchanged; "Our regulations on
evaluating symptoms are unchanged."  SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R.
§§ 404.1529, 416.929.

credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the Court finds that the reasons offered by the ALJ in support of her analysis of Plaintiff's subjective complaints are based on substantial evidence.

Plaintiff primarily raises two arguments in disputing the ALJ's evaluation of his subjective complaints. One, Plaintiff asserts that the ALJ erred by not considering all of the factors outlined in *Polaski* (Doc. 19 at 14). Two, Plaintiff asserts that the ALJ's decision failed to explain how Plaintiff's activities of daily living ("ADL") were inconsistent with his subjective complaints or how they are consistent with sedentary work (*Id.*).

As a preliminary matter, to the extent that the ALJ did not specifically cite *Polaski*, other case law, and/or Regulations relevant to a consideration of Plaintiff's subjective complaints, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. *Randolph v. Barnhart*, 386 F.3d 835, 842 (8th Cir. 2004). *See also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) ("Although the ALJ never expressly cited *Polaski* (which is our preferred practice), the ALJ cited and conducted an analysis pursuant to 20 C.F.R. §§ 404.1529 and 416.929, which largely mirror the *Polaski* factors.").

Additionally, an ALJ need not methodically discuss each *Polaski* factor if the factors are acknowledged and examined prior to making determination regarding Plaintiff's subjective complaints; where adequately explained and supported, evaluating subjective complaints are for

15

the ALJ to make.  *See Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000).  *See also Milam*, 794 F.3d at 984 (citing *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)) ("Of course, '[t]he ALJ need not explicitly discuss each *Polaski* factor.  It is sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints.'"); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004).

The Court finds that the ALJ provided sufficient explanation in evaluating Plaintiff's subjective limitations as consistent with the requirements of 20 C.F.R. § 404.1529 (*See* Tr. 47-49).  While the ALJ's evaluation of subjective complaints is somewhat brief as it pertains to Plaintiff's ADLs, there is also no requirement that the ALJ exhaustively discuss every activity Plaintiff engages in (Tr. 47-48).  "Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted."  *Wildman*, 596 F.3d at 966 (citing *Black v. Apfel,* 143 F.3d 383, 386 (8th Cir.1998)).  Moreover, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered."  *Id.*

In support of her analysis, the ALJ notes Plaintiff's ability to independently meet his personal care needs, drive, take care of pets, prepare meals, and do household chores (Tr. 47). The ALJ additionally acknowledges Plaintiff's treatment notes that indicate his ability to do yard work, and his testimony that has made attempts to ride his motorcycle (Tr. 47-48) (citing Tr. 87-88, 488).  Although the Court is sympathetic and acknowledges that Plaintiff cannot do many of these activities as he could prior to his injury, the Court ultimately finds that these activities raise reasonable doubt as to the consistency of Plaintiff's allegations that he is totally disabled. Plaintiff lists many additional activities that were unmentioned in the ALJ's opinion, but as previously stated there is no requirement that the ALJ mention every activity nor is there any

activity listed that clearly contradicts the ALJ's evaluation of subjective complaints (*See* Doc. 19 at 13-14). *Wildman*, 596 F.3d at 966.

Plaintiff asserts that the ALJ also did not consider Plaintiff's "work history, medications and side effects, precipitating and aggravating factors of Plaintiff's pain as well as the duration, frequency and intensity of symptoms" as required by the Regulations and *Polaski* (Doc. 19 at 14). 20 C.F.R. § 404.1529; *Polaski*, 739 F.2d at 1322. After reviewing the ALJ's opinion it is apparent that many of these assertions are inaccurate (*See* Tr. 47-49). The ALJ devotes a page and a half clearly and extensively discussing Plaintiff's history of back pain as it relates to the above factors Plaintiff disputes (*See id.*). The ALJ explicitly states, "[w]ith regard to the claimant's back impairment, I find that the degree of limitation the claimant is alleging is not supported by a preponderance of evidence in the file" (Tr. 48). Indeed, upon a complete and thorough review of the record, the Court finds Plaintiff's statements regarding the limiting effects of his impairment to be inconsistent with the record. As addressed by the ALJ, Plaintiff underwent an L3-4, L4-5 disk fusion surgery on October 10, 2014 (Tr. 48, 312). At his follow-up appointment, he was noted as doing quite well post-surgery and making slow progress with his overall walking abilities (Tr. 48, 406). After surgery, Plaintiff complained of lower back pain with activity or after tripping and he was prescribed pain medication (Tr. 48, 49, 429, 448, 497).[7] Medication management appears to have controlled his symptoms of pain (*See* Tr. 285). *See specifically* Tr. 577 (Plaintiff stating that one medication relieves his back pain and he does not need to take the other, stronger pain medication as frequently). Plaintiff's physical examinations

---

[7] Plaintiff was subsequently also referred to receive a right SI joint injection as well as left sympathetic block (Tr. 442). Plaintiff never received these treatments (Tr. 448) and elsewhere states that he did not receive the treatment because worker's compensation did not approve it (Doc. 19 at 6).

were also generally normal.  For example, Plaintiff's primary care physician between March 19,

2015 and March 2, 2016, Dr. Ashraf, frequently made observations that contradict Plaintiff's

subjective limitations (Tr. 499, 526).  During this time Dr. Ashraf routinely noted that Plaintiff

could ambulate normally (Tr. 499, 511, 517, 520, 523, 525), and on several occasions noted that

Plaintiff seemed to be doing "much better" and was "doing well clinically" regarding his back

pain (Tr. 502, 525, 528).  During these visits Dr. Ashraf also routinely noted in Plaintiff's

"General IM and Meaningful Use - Optional" an answer of "N" concerning if Plaintiff had

difficulty dressing or bathing, doing errands alone, walking or climbing stairs, and others (*See

e.g.*, 510-11, 513-14, 516).  As addressed by the ALJ, diagnostic imaging supported this analysis.

A September 2015 CT of the Lumbar Spine found no hardware complication with degenerative

disc disease on L2-L3 and L5-S1 and mild facet osteoarthrosis from L2-L3 through L5-S1 (Tr.

462-64).  Similarly, an MRI Report from June 2017, while outside the relevant period, indicates

only mild degenerative disc disease at L2-L3 and L5-S1 (Tr. 548).

  In conclusion, the Court finds the ALJ's analysis of Plaintiff's subjective complaints is

based on substantial evidence and is consistent with Regulations and case law.

## C. RFC

  The Regulations define RFC as "what [the claimant] can do" despite his "physical or

mental limitations." 20 C.F.R. § 404.1545(a).  "When determining whether a claimant can

engage in substantial employment, an ALJ must consider the combination of the claimant's

mental and physical impairments."  *Lauer v. Barnhart*, 245 F.3d 700, 703 (8th Cir. 2001).  "The

ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record,

'including the medical records, observations of treating physicians and others, and an

individual's own description of [her] limitations.'" *Tucker*, 363 F.3d at 783 (quoting *McKinney*, 228 F.3d at 863). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013).

To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his impairments. *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995). "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations omitted). The Eighth Circuit Court of Appeals clarified in *Lauer* that "[s]ome medical evidence ... must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace[.]" 245 F.3d at 704 (*quoting Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam) and *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). Thus, an ALJ is "required to consider at least some supporting evidence from a professional." *Id. See also Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); *Eichelberger*, 390 F.3d at 591.

As previously discussed, the ALJ found that Plaintiff has the RFC to perform sedentary work with the following limitations (Tr. 46). He can sit for six hours and stand and walk for two hours (*Id.*). He can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds (*Id.*). He can occasionally stoop, kneel, crouch and crawl (*Id.*). He should not work near unprotected height or hazardous machinery and should avoid concentrated exposure to extreme temperatures or vibration (Tr. 46-47). The Court finds that the ALJ's RFC determination was based on substantial evidence. Specifically, as addressed in significant detail

above, the ALJ properly evaluated Plaintiff's subjective complaints, and in doing so, conducted a complete and detailed analysis of Plaintiff's medical record, his subjective allegations of pain, activities of daily living, and his work record.

As a preliminary matter, the Court dispenses with Plaintiff's two generalized assertions that the ALJ "failed to include a discussion of why reported symptom-related functional limitation and restrictions can or cannot reasonably be accepted as consistent with the evidence" and "fail[ed] to explain how the objective evidence and examination findings support a sedentary RFC . . ." (Doc. 19 at 10).  As addressed in detail above, the ALJ thoroughly considered the record and provided a detailed analysis in evaluating Plaintiff's subjective complaints and in support of a sedentary RFC (Tr. 46-50).  The Court also dispenses with Plaintiff's argument that the ALJ "fail[ed] to explain . . . how findings of decreased strength, reflexes, sensation, range of motion, altered gait and positive straight leg raising tests were incorporated into and accommodated by the RFC" (Doc. 19 at 10).  Plaintiff provides no citation, but this assertion seems to be indicative of Dr. Burchett's findings, which were considered by the ALJ as addressed in detail above.

Plaintiff's only remaining argument is that the ALJ made no accommodation for Plaintiff's use of a cane, did not mention a cane in her RFC, and that there was no finding that the cane is not medically necessary (Doc. 19 at 10).  Contrary to these assertions, the ALJ did clearly consider and acknowledge Plaintiff's cane several times in evaluating Plaintiff's RFC— "The [Plaintiff] reported that he uses a cane to walk sometimes . . . the [Plaintiff] walks with a cane and a slight limp . . . [t]he [Plaintiff] was able to stand on one foot at a time without his cane." (Tr. 49) (citing Tr. 496, 501, 542).  Plaintiff's other argument that the ALJ did not find that his cane was not medically necessary is without merit as it is the Plaintiff's burden to

20

establish the medical need for an assistive mobility device (Doc. 19 at 10).  *See* Social Security

Ruling (SSR) 96-9p, 1996 WL 374185, at *7 (S.S.A. 1996) ("To find that a hand-held assistive

device is medically required, there must be medical documentation establishing the need for a

hand-held assistive device to aid in walking or standing, . . . .").  Furthermore, as the ALJ notes

in her opinion the medical notations from Dr. Burchett, that "he needs to use the cane because of

fear of falling" and "the [Plaintiff] ambulates without a specific limp" further undermine

Plaintiff's argument that the ALJ erred in her consideration of Plaintiff's need to use a cane (Tr.

541).  Additionally, as noted above Dr. Ashraf's findings that Plaintiff can ambulate normally

further undermine Plaintiff in this matter (*E.g.*, Tr. 499). Regardless, as Defendant correctly

points out this issue is largely moot because the VE at Plaintiff's hearing testified that Plaintiff

could do the jobs listed even if he needed to use a cane (Doc. 23 at 13; Tr. 95-96).

Finally, to the extent the Plaintiff identifies records that support Plaintiff's allegations to

the contrary, "[i]f substantial evidence supports the decision, then we may not reverse, even if

inconsistent conclusions may be drawn from the evidence, and even if we may have reached a

different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).  Plaintiff cites

numerous records that he claims the ALJ failed to evaluate, mostly concerning his back pain and

mobility issues, but these assertions are largely unsupported by the record (Doc. 19 at 10-11).

To the contrary, most of the issues Plaintiff cites were specifically evaluated by the ALJ in her

RFC determination (*See* Tr. 46-50).  Although the Plaintiff claims otherwise, the ALJ clearly

discussed Plaintiff's pain/tenderness, positive SLRs, need to use a cane, slow waddling gait,

ability to walk on heels and toes, and his ability to rise from a squat (*Compare* Doc. 19 at 10-11,

*with* Tr. 48-49).  As noted previously, to the extent that the ALJ did not specifically mention the

records cited by Plaintiff this argument has no merit as long as the ALJ developed the record

fully and fairly as was done here.  *Wildman*, 596 F.3d at 966.  Moreover, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered."  *Id.*

In conclusion, the Court finds that the ALJ's RFC determination is consistent with the relevant evidence of record including the objective medical evidence, the observations of medical providers, and diagnostic test results, as well as Plaintiff's credible limitations; that the ALJ's RFC determination is based on substantial evidence; and that Plaintiff's arguments to the contrary are without merit.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED, with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 30th day of September 2020

＿＿＿/s/ Noelle C. Collins＿＿＿＿＿＿＿＿
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE